COMMONWEALTH of Kentucky,
Appellant,

v.

Christopher Lee NELSON, Appellee.

No. 92–SC–788–T.

Supreme Court of Kentucky.

Nov. 19, 1992.

Chris Gorman, Atty. Gen., Frankfort, C. Lloyd Vest, Asst. Com. Atty., Louisville, for appellant.

Frank W. Heft, Jr., Rob Eggert, Brian Jay Lambert, Office of The Public Defender, Louisville, for appellee.

## OPINION OF THE COURT

A chief circuit court judge authorized jury pool administrators to determine which jurors should be excused, postponed or disqualified from jury service. The issue before this Court is whether the delegation of this authority to administrative personnel constitutes a substantial deviation from KRS 29A.080, 29A.100 and Administrative Procedures of the Court of Justice Part II, sections 8 and 12.

Nelson was charged with numerous felonies. Before he was indicted, appellee filed a motion with the Jefferson Circuit Court that his case be heard by a grand jury selected in accordance with applicable law.

Appellee's motion was heard by Jefferson Circuit Court Judge Edwin Schroering, who denied a stay of the indictment proce-

dure but recused himself from deciding the merits of the motion. Appellee then sought, and was denied, emergency relief from the Court of Appeals. Appellee next filed a notice of appeal to this Court from the Court of Appeals' order denying temporary relief. At this time, appellee also requested that this Court grant emergency relief. The parties entered into an agreed order with this Court in which they agreed that the request for a stay of the indictment procedure would be abated, and that after the indictment was returned the validity of the indictment procedure would be decided on the merits by a special judge appointed by the Chief Justice of the Kentucky Supreme Court.

Special Judge William Cooper, who was assigned to the Jefferson Circuit Court, found that appellee was indicted by an improperly empaneled grand jury. On August 31, 1992, Special Judge Cooper ordered that the indictment against appellee be dismissed. The Commonwealth appealed this decision. This Court granted transfer.

While appellee has subsequently been reindicted in Jefferson County, we do not dismiss the issue as moot because "the litigation [involving this issue] is likely to be repeated." *Courier–Journal and Louisville Times Company v. Meigs* and *Lexington Herald–Leader Company, Inc. v. Meigs,* Ky., 646 S.W.2d 724, 725 (1983).

We hereby adopt, verbatim, the opinion of Special Judge Cooper.

### FINDINGS OF FACT

"The Defendant has been indicted by the Jefferson County Grand Jury on one count of Murder, two counts of First–Degree Robbery, nine counts of First–Degree Burglary, one count of Tampering with Physical Evidence, and two counts of Theft by Unlawful Taking Over $100.00 (should be $300.00). He moves to quash the indictment on grounds that the grand jury which indicted him was not legally constituted, specifically, that prospective jurors were disqualified, postponed and excused from jury service in contravention of KRS 29A.080, 29A.100, and II Administrative Procedures of the Court of Justice (Ad. Proc.), sections 8 and 12.

"KRS 29A.080 and II Ad.Proc., section 8 both provide that the chief circuit judge, or another judge designated by the chief circuit judge, shall determine on the basis of information provided on a juror qualification form whether a prospective juror is legally disqualified from jury service for any of the reasons listed in subsection (2) of both the statute and the regulation.

"KRS 29A.100 and II Ad.Proc., section 12 both provide that upon request of a prospective juror prior to assignment to a trial court, the chief circuit judge, or after his assignment to a trial court, the trial judge, may excuse or postpone the service of that juror upon a showing of undue hardship, extreme inconvenience or public necessity.

"Jefferson County is the most populous county in the Commonwealth of Kentucky. For the month of July 1992, 1,550 jury summonses were issued, 1,400 for the petit jury and 150 for the grand jury. Defendant's Exhibit 4 shows the following disposition of those summonsed:

| Petit | Grand | Total | |
|---|---|---|---|
| 301 | 38 | 339 | Summons undeliverable |
| 160 | 14 | 174 | No response |
| 350 | 30 | 380 | Disqualified from jury service |
| 220 | 17 | 237 | Excused |
| 128 | 25 | 153 | Postponed |
| 241 | 26 | 267 | Jurors served |
| 1,400 | 150 | 1,550 | Total |

"There are sixteen judges of the Jefferson Circuit Court. The chief circuit judge is elected every two years pursuant to SCR 1.040(2). Because of the additional burden of administrative duties, the chief circuit judge is granted a twenty-five percent reduction in normal caseload. Since she spends approximately twenty-five percent of her time on these additional administrative duties, her reduced caseload leaves her with approximately the same workload as the other circuit judges.

"Prior to March 28, 1988, the chief judge of the Jefferson Circuit Court personally reviewed each juror qualification form and decided which jurors were disqualified, which should be excused, which should be postponed, and which should serve. On March 28, 1988, the then chief circuit judge issued an order authorizing Beverly Doyle, Robyne Smith, and Tom Barrow, the three jury pool administrators, as "designees of the Chief Judge," to determine which jurors should be excused, postponed or disqualified from jury service. The order recited that it would expire on December 31, 1989.

"On January 15, 1990, a new order was issued designating Doyle, Smith and Barrow to continue determining which jurors should be excused, postponed or disqualified from jury service. That order recites an expiration date of December 31, 1991. After expiration of that order, a new order designating Doyle, Smith and Barrow to continue performing this function was not entered until June 30, 1992. However, Doyle, Smith and Barrow continued to determine which jurors should be excused, postponed or disqualified from jury service without consultation with the chief circuit judge through the empaneling of the July 1992 grand jury, which occurred on July 1, 1992.

"On June 5, 1992, the Defendant was arrested on the charges for which he now stands indicted.

"On June 29, 1992, the Defendant filed a "Motion That His Case Be Heard Only By a Grand Jury Selected in Accordance With Applicable Law," in which he alleged that the grand jury scheduled to be empaneled on July 1, 1992 would not be legally constituted, since prospective members of that grand jury had been excused, postponed or disqualified from jury service by persons other than the chief circuit judge or another judge designated by the chief circuit judge. The grand jury was empaneled on July 1, 1992. Sometime after the grand jury was empaneled and before July 6, 1992, the chief circuit judge reviewed the jury qualification forms of those jurors summonsed for grand jury service and concurred in the decisions previously made by Doyle, Smith and Barrow as to which jurors should be disqualified, postponed or excused and which should serve.

"The Defendant was indicted by the grand jury on July 16, 1992. He makes no showing that any prospective juror was disqualified, postponed or excused, except for reasons permitted by the applicable statutes and regulations, *i.e.*, he shows no actual prejudice.

## CONCLUSIONS OF LAW

"All statutes and regulations pertaining to the empaneling of juries and the duties of the judge and other officials with reference thereto are not regarded as mandatory. *May v. Commonwealth*, 294 Ky. 308, 171 S.W.2d 465, 466 (1943). But a substantial deviation from those statutes and regulations will result in reversal of a conviction. *Robertson v. Commonwealth*, Ky., 597 S.W.2d 864, 865 (1980). The statutes and regulations in question specifically require that decisions concerning disqualifications of, requests for postponement of, and excuse from jury service be made by the chief circuit judge or another judge. There are other statutes and regulations pertaining to jury selection which specifically authorize action by the chief circuit judge "or his designee," *e.g.*, KRS 29A.060(1) and (8), II Ad.Proc., sections 4, 5, 10, thus indicating an intent by the legislature and the promulgators of the regulations that some functions may be delegated by the chief judge to a non-judge designee, while others may not. Clearly, in the case of disqualification, postponement or excuse from jury service, delegation to a non-judge is not permitted. The issue becomes

whether the delegation of this authority to administrative personnel constitutes a substantial deviation from the statutes and rules.

"No reported Kentucky case has addressed the specific issue raised by the Defendant in this case. But in *Rodgers v. Commonwealth*, 314 Ky. 496, 236 S.W.2d 270 (1951), an indictment was dismissed, because the three jury commissioners did not act in concert in filling the jury wheel. Two of the commissioners essentially delegated that task to the third commissioner. *Compare, Smith v. Commonwealth*, Ky., 734 S.W.2d 437, 443 (1987), where the judge made the decisions concerning disqualifications and requests to be excused, but, by oversight, failed to note the reasons therefor on the jury list. That omission was held not to be a substantial deviation from the required procedures.

"This exact issue has been addressed by an intermediate appellate court in Missouri. *State v. McCaw*, Mo.App., 668 S.W.2d 603 (1984). While cases from other jurisdictions are not decisive, they can be informational and persuasive. *Cf., Epsilon Trading Co. v. Revenue Cabinet*, Ky.App., 775 S.W.2d 937 (1989). The Missouri interpretation is persuasive here, because Missouri applies the same "substantial compliance" test in the absence of prejudice as does Kentucky, *State v. Gresham*, Mo. banc, 637 S.W.2d 20, 25 (1982), and because the applicable Missouri statute, V.A.M.S. section 494.031, rests responsibility in "the court" to decide whether a prospective juror should be excused, thus is less specific than the Kentucky statutes and regulations in that regard. In *State v. McCaw, supra,* the circuit judge had delegated this responsibility to the circuit clerk. This was held to be a substantial deviation from the statute.

"While a circuit judge may work hand-in-hand with his clerk in excusing prospective jurors, he cannot delegate the entire responsibility to the clerk....

. . . . .

"... The purpose of the statutory process is to ensure random selection of jurors, to prevent jury packing or selection of jurors 'with reference to a particular case.'" *Id.* at 604.

■ "A defendant has a right to a grand and petit jury selected at random from a fair cross section of the community. *Colvin v. Commonwealth*, Ky., 570 S.W.2d 281 (1978). The criteria for legal disqualification of a prospective juror are relatively narrow, but still require interpretation, *e.g.,* whether a prospective juror is physically or mentally disabled from rendering effective jury service. The criteria for excuse or postponement are much broader, *i.e.,* undue hardship, extreme inconvenience and public necessity, requiring the exercise of substantial interpretation and discretion. The evidence in this case is that 73.5% of all prospective grand jurors who responded to their summonses were excused, postponed or disqualified from service. How many of these decisions required the exercise of discretion on the part of the jury pool administrators is unclear, but 43% of those who responded to their summonses were excused or postponed, in each instance a decision requiring substantial interpretation and discretion. This discretionary reduction in the pool of prospective grand jurors affects the accused's right to a random selection from a fair cross section of the community. Presumably, this is why the legislature and the promulgators of the regulations chose to vest this discretion in the hands of a judge and not a court administrator. The improper delegation of judicial discretion to excuse, postpone or disqualify prospective jurors in this instance constitutes no less a substantial deviation from the statutes and rules than occurred in *Rodgers v. Commonwealth, supra,* and *State v. McCaw, supra.*

■ "The chief judge's subsequent concurrence with the decisions of the jury pool administrators did not cure the defect. The illegally constituted grand jury had already been empaneled before the chief judge examined the qualification forms. Once illegally empaneled, the grand jury could not be legitimized *nunc pro tunc* by an ex post facto concurrence by the chief judge in the decisions of the jury pool administrators."

■ An additional issue that Special Judge Cooper did not have to address is the fact that other individuals have been indict-

ed by improperly empaneled Jefferson County grand juries, many of whom were subsequently convicted. Due to lack of preservation, such individuals cannot now raise issue with whether the grand jury which indicted them was properly empaneled.

RCr 9.34 requires that "[a] motion raising an irregularity in the selection or summons of the jurors or formation of the jury must precede the examination of the jurors." This Court has stated that

> [w]e are of the opinion that *where the error is preserved* and there is a substantial deviation in the jury selection from the rule and the statute a reversal is required. (Emphasis added.)

*Robertson v. Commonwealth*, Ky., 597 S.W.2d 864, 865 (1980). We have determined that, if such error is preserved for review, the delegation of the chief judge's authority to disqualify, postpone and excuse jurors was violative of KRS 29A.080, KRS 29A.100 and Ad.Proc. section 8 and section 12.

It may be argued that *Bartley v. Loyall*, Ky.App. 648 S.W.2d 873 (1982), indicates that irregularities with respect to the jury, which are first discovered after trial, may be raised at that time. However, *Bartley* is distinguishable from the case at bar. *Bartley* involved the method by which jurors were selected and specified that the complaining party neither knew nor by reasonable diligence could have known the grounds for challenge before the jury was accepted. *Bartley* at 875. The instant case involves a published delegation of the power to grant juror disqualification, postponement and excusal.

In the case before us appellee properly preserved this error. But those individuals who have been convicted and now for the first time wish to bring issue with the grand jury, failed to timely preserve the error. If those individuals were permitted to raise the issue in a post-conviction motion, the language in *Robertson* would become superfluous.

For the foregoing reasons, the decision of the Jefferson Circuit Court is affirmed.

All concur.